UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LEON K. MITCHELL,

    Plaintiff,

  v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____

DECISION & ORDER

17-CV-1207P

## PRELIMINARY STATEMENT

Plaintiff Leon K. Mitchell ("Mitchell") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Supplemental Security Income ("SSI"). Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a United States magistrate judge. (Docket # 10).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 14, 18). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

**DISCUSSION**

**I.     Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform his past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

II.     **Mitchell's Contentions**

Mitchell contends that the ALJ's determination that he is not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 14-1, 19). Specifically, Mitchell argues that the ALJ did not properly evaluate the opinion of his treating physician, Dr. Patrick Siaw ("Siaw"). (Docket ## 14-1 at 17-21; 19 at 1-2). Mitchell also claims that the ALJ erred by relying on the opinion of consultative examiner Dr. Donna Miller ("Miller") and that Miller's opinion does not provide substantial evidence for the ALJ's RFC determination. (Docket # 14-1 at 21-23). Finally, Mitchell maintains that the ALJ failed to properly weigh the functional capacity evaluation completed by registered occupational therapist Joseph Higgins. (*Id.* at 23-24).

III.    **Analysis**

A.      **The ALJ's Assessment of Dr. Siaw's Opinion**

I turn first to Mitchell's argument that the ALJ improperly discounted Siaw's opinion based on a mischaracterization of certain record evidence and the ALJ's lay interpretation of that evidence. (Docket ## 14-1 at 17-21; 19 at 1-2). Mitchell contends that the ALJ mischaracterized a July 2015 MRI of Mitchell's lumbar spine (Tr. 1491-94) (the "July 2015

4

MRI"). In Mitchell's view, the ALJ erred not only by mischaracterizing the MRI's findings, but also by "impermissibly reinterpreting" the July 2015 MRI using his own "lay reading of the raw medical data." (Docket # 14-1 at 20).

Based upon my review of the record, I agree that the ALJ mischaracterized the July 2015 MRI. Moreover, the mischaracterization significantly affected his RFC assessment, including the determination to assign less than controlling weight to Siaw's opinion. In addition, the ALJ relied upon his mischaracterization of the July 2015 MRI in discounting Mitchell's credibility and in assigning "great weight" to Miller's consultative opinion. On this record, I cannot conclude that the ALJ's error is harmless.

"It is well-settled that while an ALJ need not mention every item of testimony presented or reconcile explicitly every conflicting shred of medical testimony, . . . the ALJ may not ignore or mischaracterize evidence of a person's alleged disability." *Seignious v. Colvin*, 2016 WL 96219, *4 (W.D.N.Y. 2016) (alterations, citations, and quotations omitted). Indeed, where "the ALJ's supporting rationale for his physical RFC assessment [is] based on several mischaracterizations of the record," the resulting RFC assessment is "legally flawed and unsupported by substantial evidence." *Id.* at *5; *see also King v. Colvin*, 2016 WL 1398987, *4 (W.D.N.Y. 2016) ("[w]here an ALJ mischaracterizes the evidence or relies on only the portions of the record that support a conclusion of 'not disabled,' a remand is necessary"); *Ellis v. Colvin*, 29 F. Supp. 3d 288, 302 (W.D.N.Y. 2014) ("[i]t was plainly improper for the ALJ to bolster his own RFC assessment with a blatant misstatement of the record").

Moreover, "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." *Balsamo v. Chater*, 142 F.3d at 81; *accord Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (summary order) (an ALJ is "not at liberty to substitute his own lay

interpretation of [an MRI] diagnostic test for the uncontradicted testimony of [a treating physician], who is more qualified and better suited to opine as to the test's medical significance"). "[T]he ALJ's RFC determination must be supported by competent medical opinion [and] the ALJ is not free to form his own medical opinion based on the raw medical evidence." *Goble v. Colvin*, 2016 WL 3179901, *6 (W.D.N.Y. 2016) (collecting cases).

        Here, Siaw completed a form assessing Mitchell's employability based on his alleged disabling impairments on November 15, 2014. (Tr. 1185-86).[1] Siaw indicated that Mitchell suffered from various permanent medical conditions, including chronic lower back pain, and opined that he was "permanently disabled due to injuries from [an] accident [in 2006 and] subsequent failed surgery." (*Id.*). Siaw opined that Mitchell was "very limited" in his ability to walk, stand, lift, carry, push, pull, bend, and climb, and "moderately limited" in his ability to sit. (Tr. 1186).[2]

        The ALJ found that Siaw's November 2014 opinion had "limited probative value" because it was not supported by either "diagnostic studies" or "clinical findings." (Tr. 23). In the ALJ's view, the July 2015 MRI "show[ed] no evidence of recurrent disc herniation or spinal compromise." (*Id.* (citing Tr. 1491-94)). In making this finding, the ALJ plainly misstated the findings of the July 2015 MRI.

        Mitchell presented for the MRI in July 2015 with a history of L4-5 and L5-S1 discectomy, posterior decompression and fusion, and noted that he was experiencing lower back and leg pain. (Tr. 1491). The MRI, as interpreted by radiologist Dr. Vikas Datta ("Datta"),

---

[1] References to page numbers in the Administrative Transcript (Docket # 7) utilize the internal Bates-stamped pagination assigned by the parties.

[2] Siaw completed a similar form on March 29, 2012, in which he assessed Mitchell with the same limitations. (Tr. 1407-09). Mitchell does not address this opinion "because it predates the application date by more than a year." (Docket # 14-1 at 18 n.2). Therefore, the Court limits its discussion to Siaw's 2014 opinion.

6

revealed findings that Mitchell had "moderate spinal canal and minimal bilateral neural foraminal narrowing" at the L3-4 level. (*Id.*). At the L4-5 level, while Mitchell's spine showed "no evidence of recurrent disc herniation" and the "spinal canal [was] widely patent," there was still "minimal bilateral neural foraminal narrowing." (Tr. 1491-92). In addition, at the L5-S1 level, there was no "evidence of recurrent disc herniation," the "spinal canal [was] patent," and there was "no significant neural foraminal narrowing," but there was "prominent epidural fat with tapering of the thecal sac." (Tr. 1492). Upon review of the July 2015 MRI, Mitchell's treating neurologist, Dr. Hamill, indicated that the "MRI [was] very difficult to interpret secondary to [Mitchell's] size but it look[ed] like he ha[d] moderate stenosis at L3-4." (Tr. 1517). The ALJ did not address Hamill's assessment of the July 2015 MRI in the RFC portion of his decision.[3]

       The Commissioner correctly notes that the ALJ more accurately summarized the July 2015 MRI and Hamill's opinion of the MRI at step two of his decision. (Docket # 18-1 at 19; *see* Tr. 15 ("Results of the [MRI] identified post-operative changes at the L4-5 and L5-S1 level with no evidence of recurrent disc herniation[;] [Mitchell's] spinal canal was patent[;] [m]inimal neuroforaminal narrowing was noted at the L4-5 level with mild to moderate spondylosis at the remaining vertebral levels . . . [;] [i]n September 2015, Dr. Hamill reported that the claimant's MRI scan reveal[ed] moderate stenosis at the L3-4 level")). In addition, in finding that Mitchell displayed "normal mobility and motor function," the ALJ reasoned in part that the July 2015 MRI showed that Mitchell's "spinal canal remain[ed] patent with evidence of no more than minimal neuroforaminal narrowing." (Tr. 20 (citing Tr. 1491-94)).

---

      [3] At step four, the ALJ mentioned only that portion of Dr. Hamill's report that concluded that Mitchell was not a candidate for surgery due to his obesity. (Tr. 22).

7

In the Court's view, however, the ALJ's summary of the record evidence at step two neither explains nor excuses his blatant mischaracterization at step four that the July 2015 MRI showed "no evidence" of spinal compromise. The July 2015 MRI clearly revealed spinal compromise at certain levels, as opined by Dr. Datta and corroborated by Dr. Hamill. The fact that the ALJ found at step four that the MRI showed "no evidence" of spinal compromise – without reference to any opinion that the MRI supports such a finding – makes the basis for the ALJ's RFC assessment difficult to understand and leads this Court to conclude that the ALJ substituted his own lay reading of that diagnostic test for that of uncontradicted evidence from medical professionals. This was improper. *See Meadors v. Astrue*, 370 F. App'x at 183 (an ALJ is "not at liberty to substitute his own lay interpretation of that diagnostic [MRI] for the uncontradicted testimony of [a medical professional], who is more qualified and better suited to opine as to the test's medical significance"); *George v. Comm'r of Soc. Sec. Admin.*, 2019 WL 608850, *3 (W.D.N.Y. 2019) ("[a] misstatement of fact in the ALJ's decision is material when it prevents the reviewing court from following the adjudicator's reasoning[;] . . . [w]hen an ALJ's statement is unsupported and inaccurate, it may be impossible for the [c]ourt to conduct a review for substantial evidence") (quotation omitted).

Moreover, the ALJ relied upon his mischaracterization of the July 2015 MRI in three critical respects in his RFC assessment. First, the ALJ relied on it in discounting Siaw's opinion, which the ALJ found to be of limited probative value. (Tr. 23 ("[a]lthough Dr. Siaw states that [Mitchell] suffers from failed back surgery, an MRI scan of the lumbar spine shows *no evidence* of recurrent disc herniation or spinal compromise") (citing Tr. 1491-94) (emphasis supplied)). The ALJ also relied upon it in assigning "great weight" to Miller's consultative opinion, finding that "[Miller's] conclusions [were] consistent with diagnostic studies, which

8

identif[ied] *no evidence* of recurrent disc herniation or canal compromise." (*Id.* (citing Tr. 1491-94) (emphasis supplied)). Finally, the ALJ discounted Mitchell's credibility based in part on this same misinterpretation of the July 2015 MRI. (Tr. 21-22 ("[t]he claimant also reports a history of chronic back pain following spinal surgery[;] [h]owever, an MRI scan of the lumbar spine, performed in July 2015, revealed *no evidence* of recurrent disc herniation or canal compromise") (citing Tr. 1491-94) (emphasis supplied)).

Because the ALJ's mischaracterization of the July 2015 MRI was a "strong[] consider[ation]" in his RFC assessment that Mitchell could perform the full range of light work, this Court cannot conclude that the ALJ's error in interpreting this evidence was harmless. *See Vasquez v. Berryhill*, 2018 WL 824183, *3 (D. Conn. 2018) (remanding for new credibility determination and re-weighing of opinion evidence based on ALJ's "factually inaccurate" reading of the record related to his view that plaintiff only engaged in "conservative treatment"; "[w]hile the ALJ does list other reasons for discounting [p]laintiff's credibility, the opinion indicates that the ALJ strongly considered [p]laintiff's 'conservative' treatment history when determining her RFC[;] [f]or example, he declined to give controlling weight to the opinions of two of [p]laintiff's treating physicians in part because he reasoned that the restrictive limitations they assessed were inconsistent with [p]laintiff's treatment history[;] [s]ince the ALJ's evaluation of the opinion evidence *and* of [p]laintiff's subjective complaints was based on inaccurately reading the record in *two* significant ways, the [c]ourt is unable to find that substantial evidence supports the RFC"); *see also George v. Comm'r of Soc. Sec. Admin.*, 2019 WL 608850 at *3-4 (ALJ "plainly" misstated treatment notes from treating physician regarding observations that were "important – and indeed material – to the ALJ's evaluation of [claimant's] claims" of disability; "[u]nder these circumstances, there is good reason to conclude that the

9

ALJ's determination was indeed affected by this misstatement of the record"); *Owens v. Berryhill*, 2018 WL 1865917, *5-6 (E.D.N.Y. 2018) (remanding based on ALJ's failure to properly weigh opinion of treating physician; "[b]y concluding that the two diagnostic studies demonstrate[d] only 'extremely mild findings' and thus discounting [treating physician's] medical opinion, [the ALJ] impermissibly interpreted the [c]laimant's medical tests"); *Wolfe v. Colvin*, 2013 WL 5974225, *4-5 (N.D.N.Y. 2013) (finding that ALJ did not properly weigh treating physician's opinion; "[t]he ALJ, through his emphasis, clearly believed that the 'mild' findings contradicted [p]laintiff's claims of disabling pain and undermined [treating physician's] assessment[;] [h]owever, the ALJ is not a medical professional and is not in a position to opine as to whether abnormalities characterized as 'mild' in an MRI or x-ray report might nevertheless cause significant pain or other limitation").

For these reasons, I conclude that the ALJ's mischaracterization of the July 2015 MRI renders his RFC assessment "legally flawed and unsupported by substantial evidence" and that remand is warranted. *See Seignious v. Colvin*, 2016 WL 96219 at *5; *see also King v. Colvin*, 2016 WL 1398987 at *4 ("[w]here an ALJ mischaracterizes the evidence or relies on only the portions of the record that support a conclusion of 'not disabled,' a remand is necessary"); *Ellis v. Colvin*, 29 F. Supp. 3d at 302 ("[i]t was plainly improper for the ALJ to bolster his own RFC assessment with a blatant misstatement of the record").

### B.     Mitchell's Remaining Contentions

As noted above, Mitchell advances several other arguments he believes require remand. In light of the findings discussed above, however, the Court need not reach Mitchell's remaining contentions. *See*, *e.g.*, *George*, 2019 WL 608850 at *3 ("[b]ecause this [c]ourt finds

that remand is required by the ALJ's material factual inaccuracy, it does not address [claimant's] latter two arguments").

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 18)** is **DENIED**, and Mitchell's motion for judgment on the pleadings **(Docket # 14)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

                                              *s/Marian W. Payson*
                                              MARIAN W. PAYSON
                                           United States Magistrate Judge

Dated: Rochester, New York
        June 7, 2019